UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

THOMAS DOOLEY,

    Plaintiff,

v.

UNITED INDUSTRIES CORPORATION,
SPECTRUM BRANDS, INC., EUGENE
HOGE, and ALLISON FOLEY,

    Defendants.

Case No. 10-cv-37-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motions to Dismiss (Docs. 33, 44), Motion to Strike (Doc. 35), and Memoranda (Docs. 34, 45, 36) in support thereof.[1]  Plaintiff Thomas Dooley (hereinafter "Dooley") filed Responses (Docs. 40, 49, 41) thereto, to which Defendants filed Replies (Docs. 50, 53, 51).

Dooley filed Motions to Strike (Docs. 57, 58) the replies to the motions to dismiss, and Defendants submitted Responses (Docs. 61, 62) thereto.  Dooley's motions rest on a misunderstanding of the Local Rules, as Defendants' reply briefs were timely and proper in light of the complexity of the instant motions.  *See* S.D. Ill. L. R. 7.1(c), 5.1(c).  Accordingly, the Court **DENIES** said motions (Docs. 57, 58).

For the following reasons, the Court, *inter alia*, **GRANTS in part and DENIES in part** Defendants' motions.

---

[1] Although only Defendants United Industries Corporation and Spectrum Brands, Inc. filed the first motion to dismiss and the motion to strike, Defendants Eugene Hoge and Allison Foley appropriately joined them. (*See* Docs. 44, 67, 55, 43).  And, while only Hoge filed the second motion to dismiss, Foley appropriately joined therein. (*See* Doc. 55).  Dooley filed a Response (Doc. 66) to said joinders, to which Defendants filed a Reply (Doc. 67).

**BACKGROUND**

**I.       Facts**

For purposes of a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).  The Court, accepting all of Dooley's factual allegations as true and drawing all reasonable inferences in his favor, finds as follows:

Starting sometime in 2006, Defendant Spectrum Brands, Inc. (hereinafter "Spectrum") and its subsidiary, Defendant United Industries Corporation (hereinafter "United"), hired Dooley to work in their Bridgeton, Missouri, facility.  During his time with Spectrum/UIC, Dooley worked with Douglas Colvin (hereinafter "Colvin"), another employee of the two companies.  Colvin is a convicted felon; more precisely, Colvin has been convicted of three felonies, for which he was sentenced to eight years imprisonment, and has been a suspect in more than one murder.

On August 29, 2009, Colvin broke into Dooley's office in the Spectrum/UIC warehouse and stole Dooley's personal computer.  Dooley found Colvin in his office that day and, realizing things were amiss, asked Colvin to accompany him to the office of their supervisor, Defendant Eugene Hoge (hereinafter "Hoge").  Part of Spectrum/UIC's contract of employment requires employees to file reports of incidents, such as theft, to be made to supervisory officials.  On their way to the office, Colvin thrice-said to Dooley, "I'm going to fucking kill you!", or words to that effect.  After Dooley reported Colvin's theft and threats to Hoge, no remedial action was taken.

Dooley was not deterred, and, on September 21, he informed another supervisor, Defendant Allison Foley (hereinafter "Foley"), of Colvin's rap sheet and convicted felon status. Defendants still refused to take any remedial action; rather, for reporting the theft, threats, and criminal record to his supervisors and the City of Bridgeton Police Department, Spectrum/UIC continued to have Dooley work with Colvin.  Spectrum/UIC ultimately discharged Dooley from his employment on September 23.  Meanwhile, Defendants maintain that Dooley absented himself from work without a medical excuse and thereafter voluntarily resigned.

Dooley has fallen on hard times since leaving Spectrum/UIC.  He has been unable to find work, in part, because prospective employers inevitably catch wind of Spectrum/UIC's reasons for his discharge.  Further, although he now resides in Illinois, Dooley continues to fear that Colvin will act on his threats.   Dooley suffers from mental stress and anxiety because of this fear, much of which developed after his move to Illinois.

## II.     Relevant Procedural Posture

On December 18, 2009, Dooley filed suit in Madison County, Illinois, alleging claims of wrongful discharge (Count I), breach of good faith (Count II), negligent hiring (Count III), violation of the Family and Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. § 2601, *et seq.*, (Count IV), civil conspiracy (Count V), and unsafe place to work (Count VI) against all Defendants.  UIC and Spectrum removed the matter to this Court on January 19, 2010, asserting federal question jurisdiction existed pursuant to 28 U.S.C. § 1331 due to the FMLA claim. Dooley eventually filed an Amended Complaint (Doc. 23), which remains the operative complaint in this litigation.  This complaint did not add any new claims but did add Foley as a defendant to all existing claims.

Defendants now move to dismiss all of Dooley's claims, excepting Count V under the FMLA, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6) respectively.

## ANALYSIS

**I.    Choice-of-Law**

Dooley's FMLA claim serves as the primary basis for this Court's original, federal question jurisdiction. As his other counts represent common law claims, they come under the supplemental jurisdiction of this Court. *See* 28 U.S.C. § 1367(a) (2006). The Court notes the jurisdictional basis governing these common law claims because, as a preliminary matter, the parties dispute the substantive state law that applies thereto.

When addressing a conflict-of-laws issue with respect to state-law claims brought under a federal court's supplemental jurisdiction, the court applies the conflict-of-laws rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir.1986); *Zaitzeff v. Peregrine Fin. Group, Inc.*, No. 08 C 4053, 2010 WL 438158, at *4 (N.D. Ill. Feb. 1, 2010). Per *Klaxon*'s guidance, this Court will be applying the conflicts rules of Illinois.

Illinois follows the Restatement (Second) of Conflict of Laws and employs the most-significant-contacts delineated therein. *Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 738 N.E.2d 964, 971 (Ill. App. Ct. 2000) (tort); *Olsen v. Celano*, 600 N.E.2d 1257, 1260 (Ill. App. Ct. 1992) (contract). In the context of a tort claim, "Illinois courts apply the local law of the place of the injury unless Illinois has a more significant relationship with the occurrence and with the parties[, then the law of Illinois should apply.]" *Vickrey v. Caterpillar Tractor Co.*, 497

N.E.2d 814, 816 (Ill. App. Ct. 1986).  To determine whether Illinois has a more significant relationship with the case than the place of injury, the court looks to the following contacts:

>   (a) the place where the injury occurred,
>   (b) the place where the conduct causing the injury occurred,
>   (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>   (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (1971); *French v. Beatrice Foods Co.*, 854 F.2d 964, 966 (7th Cir. 1988).  Meanwhile, in the context of a breach of contract claim, courts should look to "the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation and business of the parties." *Ill. Tool Works, Inc. v. Sierracin Corp.*, 479 N.E.2d 1046, 1051 (Ill. App. Ct. 1992); Restatement (Second) of Conflict of Laws § 188(2).

      In the case at bar, almost all of the underlying facts dictate that Missouri jurisprudence should be applied to Dooley's state-law claims.  As discussed *infra*, despite Dooley's contentions to the contrary, his primary injury occurred in Missouri.  Further, Illinois does not have a more significant relationship with the underlying facts and the parties than Missouri.  Dooley worked for Spectrum/UIC in Missouri, and the purported negligence due to negligent hiring and providing an unsafe place to work would have occurred in Missouri.  Further, Dooley's claims for wrongful discharge, breach of good faith, civil conspiracy, and unsafe place to work inherently focus on his relationship with Defendants, which existed and was maintained in Missouri.

      Despite these strong ties to Missouri, Dooley argues that Illinois should provide the substantive law due to his residency and the fact that Spectrum/UIC has a permanent business

location in Illinois in which it has done business.[2]  Dooley further contends that, because this case is tort-based, the Court should focus on the place "where the injury is consummated and the damage actually received."[3]  *Rundell v. La Campagnie Generale Transatlantique*, 100 F. 655, 658 (7th Cir. 1900) (admiralty case).  On that premise, Dooley argues that his damages, namely his loss of wages and benefits, stress, and anxiety, occurred while living in Illinois.  While Dooley's argument concerning residency is an important consideration, his other contentions are more dubious.  The fact that Spectrum/UIC maintains a facility in Illinois is insignificant next to the fact that Dooley worked for a Missouri branch of the corporations.  Further, Dooley's damages theory raises eyebrows because it relies on a 110-year-old admiralty case and a nearly 50-year-old decision by the Northern District of Georgia.  Regardless, while Dooley may have first experienced loss of income and stress in Illinois, these damages represent side effects of his primary injury: his termination, which occurred in Missouri.

Following the guidance of the Second Restatement, the Court finds that Missouri has the most significant contacts to this case, and its substantive law should be applied accordingly.

## II.     Negligent Hiring (Count III) and Unsafe Place to Work (Count VI)

Defendants first target Dooley's claims of negligent hiring and unsafe place to work.

---

[2] To prove the latter assertion, Dooley touts a number of extrinsic materials attached to his response brief as exhibits.  When such material is presented in connection with a motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6), the Court may convert the motion to dismiss into a motion for summary judgment or it may exclude the additional material from consideration.  *See* Fed. R. Civ. P. 12(d).  In this case, the Court declines to consider the additional materials and will consider this motion as it was captioned, under Rule 12(b)(6).

[3] Dooley also argues that since Defendants filed Answers (Docs. 37, 46, 56) to his FMLA claim, they have admitted that Illinois has the most significant contacts for choice-of-law purposes.  However, Dooley cites to no authority for this assertion, and it is hereby deemed waived.

More specifically, they argue that the exclusivity of the Missouri Workers' Compensation Act (hereinafter "MWCA") bars said claims, or in the alternative, they fail to state a claim upon which relief can be granted.

> The MWCA states, in pertinent part, as follows:
>
> Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, *and shall be released from all other liability therefor whatsoever*, whether to the employee or any other person.

Mo. Ann. Stat. § 287.120 (West 2010) (emphasis added). Put another way, "the Act provides the exclusive rights and remedies of injured employees against their employers." *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 105 (Mo. Ct. App. 2008); *State ex rel. Tri-County Elec. Coop. Ass'n v. Dial*, 192 S.W.3d 708, 710 (Mo. 2006) (en banc). This exclusivity extends to actions for negligent hiring and failure to provide a safe place to work. *See, e.g., Gunnett v. Girardier Bldg. and Realty Co.*, 70 S.W.3d 632, 643 (Mo. App. Ct. 2002) ("As the failure [to provide a safe workplace] is that of the employer, [plaintiff's] remedy is under the [MWCA]."); *State ex rel. Hammock v. Dowd*, 938 S.W.2d 675, 676 (Mo. App. Ct. 1997) ("It is the employer's duty to provide a safe working environment. . . . [The MWCA] provides an employer with immunity from common law liability for breach of that duty."); *Crofts v. Harrison*, 772 S.W.2d 901, 904 (Mo. App. Ct. 1989) (Employee's claims of negligent retention and failure to maintain a safe work place were the domain of the Missouri Industrial and Labor Relations Commission.)*; Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570 (Mo. App. Ct. 1983) (Murder of plaintiffs' daughter at her apartment was not an accident within the course of her employment; therefore, claims of negligent hiring and retention were not subject to the MWCA).

While MWCA exclusivity generally shields a plaintiff's coworkers, co-employees may be sued for doing "'something more' beyond a breach of general supervision and safety" so as to "affirmatively cause[] or increase[] his fellow employee's risk of injury." *Groh v. Kohler*, 148 S.W.3d 11, 14 (Mo. Ct. App. 2004) (citation omitted). Examples of such affirmative negligent acts include "(1) a failure to safely perform an act outside the scope of the co-employee's duties or (2) directing a fellow employee to perform acts that are dangerous and that a reasonable person would recognize as hazardous and beyond the usual requirements of the employment." *Pauley v. Ball Metal Beverage Container Corp.*, 460 F.3d 1069, 1073 (8th Cir. 2006).

Here, the incident of August 29, which underscores the claims at issue, arose out of and during the course of Dooley's employment. To wit, as the Court understands it, Dooley was working at the time of said incident. Moreover, Colvin's theft, his expletive-laden threats, and Dooley's post-threats assignment with Colvin occurred at the warehouse. The underlying premise of the unsafe place to work claim is that Defendants refused to act despite Dooley's two warnings, both of which he presumably made while on the job. Finally, the complaint contains nothing from which the Court can reasonably infer Hoge or Foley committed affirmative negligent acts like those described in *Pauley* that would place them out of the MWCA's reach.

Although Dooley claims that Defendants knew or should have known of Colvin's dangerous propensities at the time of his hiring, which likely occurred outside the scope of Dooley's employment, the above-chronicled precedent demonstrates that such claims still fall within the domain of the MWCA. Dooley also argues that "[t]here is nothing in the Complaint that alleges this assault by threat was in the course of Colvin's job duties," (Doc. 40, p. 8); however, this argument misses the mark because, for purposes of MWCA jurisdictional analysis, the Court is concerned with *Dooley's* employment.

8

As such, the Court is without subject matter jurisdiction to hear Dooley's claims for negligent hiring and unsafe place to work, and they shall be dismissed without prejudice accordingly.[4] *Hill v. Potter*, 352 F.3d 1142, 1146 (7th Cir. 2003) ("Dismissals for want of subject-matter jurisdiction are always denominated without prejudice, because they signify that the court did not have the power to decide the case on the merits."); *Seldomridge v. Gen. Mills Operations, Inc.*, 140 S.W.3d 58, 63-64 (Mo. App. Ct. 2004). Due to such disposition, the Court need not address Defendants' alternative argument that these counts fail to state a claim upon which relief can be granted.

### III. Good Faith (Count II)

Defendants next attack Dooley's good faith claim. In his response briefs, Dooley explains that this claim is for a breach of contract based upon the corporate policy of Spectrum/UIC. (Doc. 40, p. 5, ¶ 3) ("Count II alleges a contract agreement by reason of company policy that crimes and threats be reported to supervisors. The contract was violated by Defendants [sic] firing Tom Dooley for making such reports."). Dooley does not allege he had a

---

[4]The Court finds a brief discussion of 28 U.S.C. § 1445(c) to be necessary, which states "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." With this in mind, it would appear that Dooley's MWCA claims should be simply remanded to the Circuit Court for the Third Judicial Circuit in Madison County, Illinois. However, neither Dooley nor Defendants raised this potential issue.

It does not appear that the Seventh Circuit has addressed whether § 1445(c) is procedural, rather than jurisdictional, such that it can be waived. But, other Courts of Appeals have found its restriction procedural and subject to waiver in the absence of an objection made pursuant to 28 U.S.C. § 1447(c), the statute permitting motions for remand. *In re Excel Corp.*, 106 F.3d 1197, 1201 n. 4 (5th Cir.1997); *Williams v. AC Spark Plugs*, 985 F.2d 783, 786 (5th Cir.1993); *Vasquez v. N. Cnty. Transit Dist.*, 292 F.3d 1049, 1062 (9th Cir.2002) (citing *Williams*, 985 F.2d at 786); *Davis v. Olin Corp.*, No. 05-cv-4001-JPG, 2005 WL 3455120, at *3 (S.D. Ill. Dec. 16, 2005). As such, the Court hereby holds the parties have waived any argument for remand of the MWCA claims pursuant to 28 U.S.C. § 1445(c).

traditional employment contract; therefore, it can be assumed he was an at-will employee of Spectrum/UIC.  *See Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 663 (Mo. 1988) (en banc); *Adcock v. Newtec, Inc.*, 939 S.W.2d 426, 428 (Mo. App. Ct. 1996) ("An essential element to an employment contract is a statement of duration.  'Without a statement of duration, an employment at will is created . . . .'") (citing *McCoy v. Spelman Mem'l Hosp.*, 845 S.W.2d 727, 730 (Mo. App. Ct. 1993)).

"Generally, an employer can discharge an at-will employee for any reason." *Keveney v. Mo. Military Acad.*, 304 S.W.98, 101 (Mo. 2010) (en banc).  This principle is not absolute, as a public policy exception has been carved from the doctrine of at-will employment. *Id*. This "exception 'provides that an at-will employee who has been discharged by an employer in violation of a clear mandate of public policy has a cause of action against the employer *for wrongful discharge*.'" *Id*. (citing *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859, 871 (Mo. App. Ct. 1985) (emphasis added).  However, the public policy exception does not extend to a claim for breach of contract.  *Adcock*, 939 S.W.2d at 428 (At-will employment "is terminable at any time by either party with no liability for breach of contract") (citing *McCoy*, 845 S.W.2d at 730). Likewise, Missouri does not recognize a "handbook exception" that will allow one to circumvent his at-will employment.  *Johnson*, 745 S.W.2d at 661-62 (defendant's publication of handbook was not a contractual offer to its employees); *W. Cent. Mo. Reg'l Lodge No. 50 v. Bd. of Police Comm'rs of Kansas City, Mo.*, 939 S.W.2d 565, 567 (Mo. App. Ct. 1997).

Here, both binding and persuasive precedent dictate that Dooley's breach of contract claim must be dismissed.  Pursuant to *Keveney*, the public policy exception does not apply to Dooley's at-will employment, at least insofar as he alleges breach of contract.  And, *Johnson* makes clear that any broad policies of Spectrum/UIC cannot act as a contractual offer and, by

implication, serve as the basis for a breach of contract claim. Short of informing the Court that he is seeking Spectrum/UIC's employee policies and manuals in discovery, Dooley does not argue that Defendants modified his at-will status with any definiteness or clarity. *Johnson*, 745 S.W.2d at 662 ("An employer's offer to modify the at will status of his employees must be stated with greater definiteness and clarity . . . ."). His claim will be dismissed with prejudice accordingly.

### IV. Wrongful Discharge (Count I)

Defendants next argue that Dooley's wrongful discharge claim does not survive the dismissal standard promulgated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

#### 1. Motions to Dismiss Generally

The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, the complaint need not allege detailed facts. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007).

However, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. The plaintiff's pleading obligation is to avoid factual allegations "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under [Federal] Rule [of Civil Procedure] 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary

support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

### 2. Missouri Wrongful Discharge Law

"To state a claim for wrongful discharge [under Missouri law], an at-will employee must plead 'the essential elements of a valid contract and a discharge in violation thereof." *Doran v. Chand*, 284 S.W.3d 659, 664 (Mo. App. Ct. 2009) (citing *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. 1988) (en banc) (quotation omitted)). The elements of a contract include "offer, acceptance, and bargained for consideration." *Id*.

As discussed in the Court's analysis of Dooley's breach of contract claim, public policy may allow an at-will employee to recover for wrongful discharge despite his inability to plead the elements of a contract. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 101 (Mo. 2010) (en banc). Specifically, an at-will employee cannot be terminated because of the following: "(1) for refusing to violate the law or any well-established and clear mandate of public policy expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. 2010) (en banc). The latter is known as the "whistleblower" exception, which "explicitly recognizes that an employee's superiors can constitute the proper authority to whom to blow the whistle and that an employee who is fired for informing his superiors of wrongdoing by other employees is entitled to bring suit." *Id*. at 97 n.13; *Margiotta v. Christian Hosp. Ne. Nw.,* No. SC 90249, 2010 WL 444886, at *3 (Mo. Feb. 9, 2010) (en banc) ("For [plaintiff] to prevail, he must show that he reported to superiors or to public authorities serious misconduct that constitutes a violation of the

law and of . . . well established and clearly mandated public policy.") (citation and emphasis omitted).

In the instant case, Dooley's wrongful discharge claim comports with the dismissal standard of *Twombly* as it adequately pleads facts that implicate the substantive law of *Fleshner* and *Margiotta*. Specifically, Dooley discusses his interaction with Colvin on August 29, 2009, and the subsequent reports he made to supervisors on that date and September 21. He then explains that he "was discharged from his employment for reporting to the company supervisory officials and to law enforcement officials the burglary, the theft of his computer, the said employee's threats to kill him, and the said Colvin's criminal record." (Doc. 23, p. 2, ¶ 7) (underlining omitted). Defendants argue that it defies logic for Dooley to have been fired for complying with corporate policy. While the Court need not identify Defendants' motives at this stage in the litigation, the Court can reasonably infer from the amended complaint that Dooley was terminated "for making something out of nothing," being obnoxious, or the like. Perhaps more importantly, if the Court bought into Defendants' theory, many whistleblower cases would be prematurely dismissed due to undeserved deference to the movant.

Having thoroughly reviewed the amended complaint, the Court finds that Dooley's retelling of the facts and allegations regarding the reason behind his termination are facially plausible to sustain a wrongful discharge claim under a "whistleblower" public policy theory.

**V.      Conspiracy (Count V)**

Lastly, Defendants seek to dismiss Dooley's conspiracy claim. Analysis of this claim may be disposed of quickly due to well-settled law on the matter. "A parent corporation and its wholly owned subsidiary, even if separately incorporated, are not legally capable of conspiracy because their normal relationship necessarily involves a unity of economic interest." *Pink*

*Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1316 (8th Cir. 1986). Further, "[a]s a general rule, there can be no conspiracy between an agent and a principal. . . . [This is because] [t]wo entities that are not legally distinct cannot conspire with one another." *8000 Md., LLC v. Huntleigh Fin. Servs. Inc.*, 292 S.W.3d 9, 452 (Mo. App. Ct. 2009) (citations omitted). In other words, "a corporation [generally] cannot conspire with its own employees." *Id*. This is because corporate officers of a firm do not ordinarily pursue distinct economic interests. *Pink*, 788 F.2d at 1316. An exception to this prohibition on intra-corporate conspiracy claims is "when an agent has an 'independent personal stake' in achieving the object of the conspiracy." *Id*. This stake "must be in a legally distinct organization." *Huntleigh*, 292 S.W.3d at 452.

Here, Dooley does not address the intra-corporate immunity doctrine in his response briefs. The fact that Spectrum is the parent corporation of UIC and Hoge and Foley were the supervisors of Dooley at Spectrum/UIC permits proper invocation of the doctrine. Dooley has not alleged an "independent personal stake" of Hoge and Foley that would allow for circumvention of said doctrine, and it would not be reasonable for the Court to infer the existence of any. This claim will be dismissed accordingly.

## VI.     Motion to Strike

As a final matter, the Court takes up Defendants' motion to strike. Defendants seek to have the following items stricken from Dooley's amended complaint: 1) any claim for punitive damages, damages for mental stress/anxiety, or consequential damages under the FMLA count; 2) any claim for punitive damages or damages for emotional damages under the good faith count; 3) any reference to Colvin having been a "suspect in more than one murder;" 4) any request for damages pertaining to Dooley's fear that Colvin will "carry out his threats to kill;" 5) any request for damages based on the allegation that Defendants gave "false and defamatory

reasons" for Dooley's discharge, and; 6) any request for attorneys' fees in the non-FMLA counts.  Of course, as a result of the foregoing analysis, Defendants' second request is mooted and their other requests are partially mooted.

Under Federal Rule of Civil Procedure 12(f), upon a motion or upon its own initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are generally disfavored because they are often employed for the sole purpose of causing delay.  *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989);  *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (stating that "courts should not tamper with pleadings unless there is a strong reason for so doing.").  Such motions "will only be granted if the language in the pleading has no possible relation to the controversy and is clearly prejudicial." *Jennings v. State of Ill. Dept. of Corrs.*, No. 03-4087, 2006 WL 374112, at *3 (C.D. Ill.  Feb. 16, 2006) (citations and internal quotations omitted).  Mere immateriality is not sufficient to justify striking an allegation because the allegation must also be shown to be prejudicial to the moving party.  *See Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992);  *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997);  *Hardin v. Am. Elec. Power*, 188 F.R.D. 509, 511 (S.D. Ind. 1999).  The burden on a motion to strike is upon the moving party.  *Talbot*, 961 F.2d at 664; *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp.2d 1028, 1033 (N.D. Ill. 1998).

Here, Defendants do not argue much in the way of total irrelevance or prejudice caused by those allegations sought to be stricken, and the Court will not do so for them.  Further, at this point in the litigation, the Court sees no reason to decide the extent of FMLA damages or the availability of attorneys' fees for Dooley's remaining claims.  While these issues may be

addressed in a summary judgment motion or at trial so as not to prejudice Defendants, the Court will not be striking any such matters at this time.

One allegation for which Defendants argue specific prejudice is that Dooley told his superiors Colvin was a suspect in one or more murders. This allegation's obvious relevance to the wrongful discharge claim, however, dictates that it shall remain in the complaint. Defendants contend that said statement cuts against the constitutional presumption of innocence, but Dooley only said that Colvin was *suspected*, not guilty, of murder. Likewise, Dooley's continued fear of Colvin is relevant in light of the extent of the requested damages.

On the other hand, the Court agrees with Defendants that Dooley's use of the word "defamatory" is improper. He does not assert a claim for defamation and does not allege any specific publication, a necessary element of defamation. As such, the court will be striking Dooley's use of the word "defamatory." Also, Dooley concedes his claim for emotional damages under the FMLA should be stricken, which the Court shall act on accordingly.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motions to Dismiss (Docs. 33, 44). Specifically, the Court **DISMISSES** Dooley's good faith (Count II) and conspiracy (Count V) claims **with prejudice** and **DISMISSES** his negligent hiring (Count III) and unsafe place to work (Count VI) claims **without prejudice**. The Court **DENIES** said motions insofar as they seek dismissal of Dooley's wrongful termination (Count I) claim. Judgment shall be entered accordingly at the close of this case.

Further, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Strike (Doc. 35). Specifically, the Court **STRIKES** any use of the word "defamatory" in the Amended

Complaint (Doc. 23) and **STRIKES** Dooley's request for emotional damages under his FMLA (Count IV) claim.

Finally, the Court **DENIES** Dooley's Motions to Strike (Docs. 57, 58).

**IT IS SO ORDERED.**
**DATED: September 2, 2010**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
